1805.

## Franklin *v.* Gorham.

### In the Court below,

Stephen Gorham, Garret Kettletas, Archibald Mc. Intyre, James Berrian, William Berrian, and Ozias Marvin, *Petitioners ;* Samuel Franklin, William T. Robinson, Abraham Franklin, merchants in company under the firm of *Franklin Robinson & Co.* Ebenezer Graham, Jerusha Graham his wife, James Hurlbutt, Ruth Church, Daniel Church, Ebenezer Church, Josiah Church, Isaac Church, John Church, Esther Church, Elizabeth Church, Sturges Perry, Sarah Perry his wife, Stephen Betts, and Ruth Betts his wife, *Respondents.*

A. to secure a debt to B. mortgaged to him two pieces of land, by separate deeds; C. a creditor of A. levied an execution on A.'s right in one of the pieces ; held that C. was entitled to redeem both, by paying the whole mortgage money, but could not redeem the piece set off to him on execution, by paying such proportion

THIS was a petition in chancery to redeem mortgaged premises.

The following facts were stated in the petition, and found by the Court: *Nathaniel Scribner*, seised in fee of two pieces of real estate, one lying in Norwalk, the other in Fairfield, mortgaged them to *Jerusha Graham*, on the 4th of January, 1797, by distinct deeds, each conditioned for the payment of the whole mortgage money. On the 23d of October, 1797, the petitioners attached all the right of the mortgagor in the Fairfield estate. On the 17th of December following, the respondents, as creditors of *Scribner*, attached the property in Norwalk; and on the 26th of that month, having notice of the petitioners' attachment, obtained from the mortgagee, an assignment of her claims on the mortgagor, and a release to them of her title in all the mortgaged premises. The two estates attached were eventually set off, on execution, to the parties, and appraised as sub-

of the whole debt, as that piece bore in value to the whole mortgaged premises.

It is the *debt* which determines the unity of the mortgage.

An equity of redemption is indivisible.

ject to such proportion of the debt, as they respectively bore in value to the whole mortgaged premises.

The Superior Court, by a committee, ascertained the amount of the mortgaged debt, including principal, interest, and a small sum allowed for taxes ; also the value of each estate ; and then decreed a redemption of the Fairfield estate only, on payment of such proportion of the whole mortgaged debt, as that estate bore in value, at the time of the decree, to the whole mortgaged premises. ( *a* )

*Daggett*, and *R. M. Sherman*, for the plaintiffs in error.

The plaintiffs in error (respondents below) stand in the place, and are vested with all the rights of the mortgagee. Her title has suffered no change by assignment, and is still to be ascertained and measured by the contract which gave it existence. By that contract, according to the nature of every mortgage, *each part* of the premises is pledged for the *whole* debt or duty. To apportion is to violate the original contract. That is no more in the power of a court of equity, than of a court of law. The former will, indeed, in some cases, as in decreeing redemption after the expiration of the law-day, disregard the *letter ;* but the intent, which is the substance of every contract, is strictly pursued.

From the principles of this decree, great injustice might result. Should the land taken on execution by the assignee, posterior to a redemption of the residue, be reduced in value, he may lose a part or the whole of that proportion

(*a*) The words of the decree were—*upon paying the sum of* 8,684 *dollars and* 73 *cents, being such proportion of said mortgage debt, as the present value of the premises lying in Fairfield bears to that of the premises lying in Norwalk.* But this was a mere clerical mistake, as a comparison of the several sums specified will evince : For the proportion here stated will not give the result found by the Court.

of the money, for which he is left to hold land as security ; while there may still remain of the property mortgaged sufficient for his indemnity ; yet taken out of his hands by an execution creditor, whose claim was confessedly posterior to the mortgage. Prior to redemption, also, his beneficial interest in the mortgage must be in a state of constant fluctuation, changed by every event which may affect the relative value of what is, and what is not, covered by his execution. Even an *enhancement* in value of the *latter*, by the change of markets, roads, or other circumstances affecting its pecuniary worth, which are common in this infant country, would decrease the *sum* to which he would be entitled on redemption, without any change in the absolute value of the former. Should one, who had honestly loaned his fortune to a mortgagee, and been amply secured by assignment of the mortgaged premises, chance to become an execution creditor to the mortgagor, and levy on a proportion, suppose one half, of the property mortgaged—should the other half, having been previously taken by the levy of another creditor, be suddenly enhanced in value an hundred fold ; the decree in question would allow the assignee one hundredth part only of the money secured ; and *half* the property mortgaged, incumbered with his own execution, in *payment* of the rest. The assignee, in violation of the original contract, is thus made liable to all the hazards of absolute ownership, and denied the most essential advantages incident to a conditional estate. In addition to these evils, the relative value, which is to determine the sum to be received on redemption, is to remain uncertain, till ascertained by the appraisal of a committee ; in which, from the nature of the subject, which affords no certain criterion for opinion, and from the ignorance or caprice of appraisers, there would seem to be sufficient uncertainty and hazard to inhibit an adoption of the principle.

No precedent or *dictum* of such an apportionment occurs in the English reports, or treatises of the common law, though there are many cases which seem to solicit it more

strongly than the present. (*b*) "A man seised of 60 acres, " mortgages 20 to A. and then the whole to B., and then " the whole to C. who purchases in the first mortgage ; that " shall not protect more than the 20 acres, but it shall *pro-* " *tect these* 20 *acres so*, as B. shall never recover *that*, until he " pay C. *all the money* upon the first and *last* mortgage." (*c*) B. might have obtained the two thirds which were not incumbered with the first mortgage, without paying any thing. If the first mortgage protected no more than the 20 acres which it covered, would it not seem reasonable that the second mortgagee should redeem the whole, on payment of *all* the first incumbrance, and such proportion of the last as the 20 acres bore, in value, to the 60 ? No reason can be given why he should not, but that *every* part of the duty is secured *by each part* of the mortgaged premises ; and, consequently, that no *apportionment* can be decreed, without violence to the nature of a mortgage.

It is next claimed by the petitioners, that if the judgment of the court below be erroneous, they are entitled to redeem the whole premises out of the hands of the respondents, by paying the whole of the mortgage money ; and then to hold, until the respondents repay the mortgage money, and also the amount of their executions. This is claimed on the ground, that the right of redemption is a thing *indivisible*, and consequently, that they, attaching *before* the respondents, obtained *all* that right to the whole property mortgaged.

We claim that the parties are in equal equity ; and that the respondents, by becoming vested with the legal estate of the mortgagee, have right to the whole, until the defendants either pay the mortgage money, and thereby entitle themselves to the Fairfield property only ; or

(*b*) See the case *ex parte Carter*, *Amb.* 733, and others there cited.

(*c*) 2 *Fonb. Eq.* 312, cites 2 *Ventr.* 339.

U

1805.

FRANKLIN
v.
GORHAM.

that money, and all that is due on our executions, by which they would be entitled to the whole estate.

At the time of the attachments, *Scribner* was a mortgagor, whose right had not become forfeited at law. (*d*) He therefore, had no equity of redemption at this time, nor any claim whatsoever which a court of equity would enforce. His was then a right to redeem at law, by a strict compliance with the conditions of the deed. The attaching creditors could gain no right which the debtor had not; nor could the service of the attachments clothe the land with any properties not incident to it before. After the attachment of the Fairfield estate, the petitioners had a right to tender fulfilment to the mortgagee, and thereby extinguish her legal title. If they did not acquire this right, they acquired none; for it was all their debtor had.

The lands at Norwalk were not now attached. To whom did the right of redeeming them belong? The two deeds must be treated as one, and tender by the petitioners of the *whole* condition, would have extinguished the *whole* title of the mortgagee. The same tender by the mortgagor, would have produced the same effect. Consequently, the legal right of redeeming was in the mortgagor at this time, as fully as in the petitioners; and, had the property been no further incumbered till the day of redemption, the right of the mortgagor in the unattached part would have preserved in him the powers he then had. Had the petitioners performed the condition, the lands which were, and those which were not attached, would have been *ipso facto* disincumbered, and, in that state, the former would have vested in the petitioners and the latter in the mortgagor. No deed or other act of the mortgagor would have been necessary to divest her title; the basis of which would have been effectually annihilated by a legal performance of the condition.

(*d*) The mortgage debt was divided into several instalments, the first of which became payable on the 3d of January, 1798, and the last, on the 3d of January, 1802.

It is claimed by the petitioners, that " by attaching " they became *bound* to redeem the *whole*, if any, and *a* "*fortiori* had right so to do. The right to redeem is there- " fore indivisible, and *all* vested in the petitioners." This argument proves, equally, that the mortgagor, after their attachments, had the whole remaining in him; for he still had right, by virtue of his interest in the Norwalk estate, to redeem ; and was equally *bound* to redeem the *whole*, if any.

If by *redeeming*, is meant acquiring the legal title to the land, the proposition that they were *bound* to redeem *at all* is not true ; but if when it is said, "they became bound to redeem the whole, if any," no more is intended, than that they were bound to pay the *whole* mortgage money in order to obtain the legal title to *any part* of the lands, it is admitted they were so bound, and had, of consequence, right to do. Equally true is it, that the mortgagor had the same right ; but does this prove priority ? Do these premises furnish any conclusion with respect to one, which does not equally follow with respect to the other also ? The payment to a mortgagee must, indeed, be indivisible. No payment or tender of part, at the day, would extinguish his legal title. But the extinguishment itself would enure to vest the legal title in those, respectively, who should own, at the time, the mortgagor's interest in the several parts of the mortgaged premises.

If the petitioners, by their attachments, took the whole right of the mortgagor, the principle one which they hold it must be productive of the greatest injustice. A. might levy on 1000 acres, the estate of B. mortgaged for one hundredth part of its value ; procure an appraisal of a small defined part to satisfy a trifling claim, and thereby become owner of the whole. If the right of redemption be indivisible, he has not only a priority, but *all* B.'s interest in the 1000 acres. The proposition that B. like a subsequent mortgagee, may redeem by paying A.'s execution, is repug-

nant to the principles of a decision (e) of this honourable Court, establishing the law, that a mortgagor cannot redeem mortgaged lands, taken by the levy of an execution. But if it be admitted, that the right of redemption is divisible; that there still remains in the mortgagor a distinct and unimpaired right in other parts of the mortgaged premises, not affected by the levy; the mortgagor, by virtue of *that*, may obtain justice in Chancery, without thwarting any principles already established.

Indeed, there is not, in any precedent or principle, or in the nature of the thing, the least foundation for predicating indivisibility of this, any more than of any other interest. Should two creditors levy at the same time, on distinct moieties of land under the same mortgage, each right would be independent of the other, although it could not be enjoyed but by obtaining the legal estate, on compliance with such conditions as law or equity, in the case given, might prescribe. To say that the interest of the mortgagor is not, in such a case, to every substantial purpose, divided, is to speak unintelligibly, if not absurdly.

But if the indivisibility of the right of redemption be admitted, it would seem, with more propriety, to exclude the petitioners from *all* claim, than to entitle them to claim the whole. Their attachments, purporting to take but a *part* of the right of the mortgagor, which, by the supposition, is impossible, must, on that principle, be inoperative.

If the foregoing reasonings be correct, the principles of a decree, consistent with law and justice, are obvious. At the completion of all the attachments, and prior to the assignment of the legal estate by the mortgagee to the respondents, the right of redemption, in each party, was equal. The title of *Scribner* to the Norwalk estate, was as good as his title to that in Fairfield; and the *time* when they were respectively taken from him is of no importance. Now,

(e) *Ante*, vol. 1, p. 93, *Punderson* v. *Brown*.

the parties are before this Court in equal equity, and by the assignment of the mortgagee's title, and lapse of the law day, the respondents have the absolute estate at law. According to a principle, well established by many adjudications, (*f*) they are entitled to hold the whole, till all their claims on the estate, not posterior *in right* to those of the petitioners, are satisfied. They cannot be affected by *notice* of the petitioner's attachments, if those attachments secured no rights, in their nature prior to their own.

*Edwards*, (of New-Haven,) and *Smith*, (of Woodbury,) for the defendants in error.*

BY THE COURT unanimously, the judgment was reversed.

The respective estates in Norwalk and Fairfield, though comprised in two separate deeds, form but one entire pledge for the security of the debt due to Mrs. *Graham*; on the payment of which, according to the terms of the condition in each deed, both would have been released; on failure, both were still subject to an equity of redemption in the mortgagor.

An equity of redemption is indivisible; and though liable to be attached, and set off in satisfaction of a debt, as the property of the mortgagor, cannot be apportioned among creditors.

As subsequent mortgagees have a lien on the estate, and so a right to remove all former incumbrances, by redemption; the same principle is applicable to attaching creditors.

---

* The reporter regrets, that in consequence of his being called out of Court, while these gentlemen were speaking, he has no minutes, from which he can give a summary of their arguments.

(*f*) 2 *Vent.* 337. *Marsh* v. *Lee.* 1 *Chan. Ca.* 201, *Bovey* v. *Shipwick.* 2 *Chan. Ca.* 212, *Wyndham* v. *Richardson.* 1 *Vern.* 187, *Edmunds* v. *Povey.* 2 *Vern.* 30, *Sadler* v. *Bush.* 2 *Vern.* 279, *Holt* v. *Mill. Pow. Mort.* 511, *et seq.*

The first acquires a right to redeem the whole estate out of the hands of the mortgagee, by paying the mortgage money, and thus to place himself in his situation ; with this difference only, that to the mortgage debt he has added his own ; he having acquired a defeasible estate, a lien on the property, removable by the next attaching creditor ; who has acquired the same right, diminished only in value. This process may be pursued, until the estate is exhausted.

The foregoing principle being adopted, a rule is furnished, by which the respective rights among attaching creditors can be correctly, and distinctly, ascertained, and settled.

The respondent's having purchased in the legal estate of Mrs. *Graham* did not vary their condition as creditors. The idea is unfounded, that this transaction added any legal or equitable force to their claims, or varied their relative situation with the other attaching creditors.

By this purchase, they took the estate of the mortgagee, subject to the same equity as before, redeemable either by the mortgagor, or his creditors. Assuming the principle, that the whole property comprised in both mortgage deeds forms but one mortgage, pledged for one and the same debt ; that an equity of redemption is not divisible, and not to be apportioned among creditors ; and that the first attaching creditor places a lien on the estate, and acquires a right to redeem the whole ; then, in this case, the petitioners were entitled to a conveyance of all the right, which the respondents had derived by their deed from Mrs. *Graham*, the mortgagee, on paying to the respondents all that remained due of the original mortgage, including principle and interest, togher with a small sum expended by the respondents for taxes.