<em>New-London</em>,<br>July, 1851.<br>————<br>Cross<br><em>v.</em><br>Robinson.

CROSS and another <em>against</em> ROBINSON.

The testator devised to his wife the use and improvement of one half of his real estate during her widowhood, and then devised to his five sons in fee, subject to such estate in his wife, all his estate both real and personal, provided that none of the real estate so given to his five sons should be sold until three years after the widowhood of his wife, unless sold to some of said five sons, meaning to have it improved all together until that time. By conveyances, in the first instance, from one to another of the sons, and thence to strangers, before the expiration of the time limited in the will, three-fifths of the estate passed to the plaintiffs. In an action of ejectment, brought after the death of the testator's wife, but still before the expiration of said time, against one of the devisees, it was held, that the object of the clause in the will limiting the power of alienation, was, to protect the widow in the enjoyment of her interest without the annoyance, which might result from the occupancy of a stranger with her, and not to deprive the sons of all power of alienation during the period specified; consequently, the title of the plaintiffs was not repugnant to the will.

By a mortgage deed containing the usual covenants of seisin and warranty, the mortgagor is estopped from denying the title of the mortgagee, or his assignee.

As between the mortgagor and mortgagee or his assignee, the payment of the mortgage debt, after the law-day, does not affect the legal title, in a court of law; and of course, will constitute no defence to an action of ejectment.

Ouster, as between cotenants.

THIS was an action of ejectment, for two parcels of land and the buildings thereon, in the town of *Stonington*, commenced in *March*, 1849.

The plaintiff pleaded the general issue, in which the cause was tried, at *Norwich*, at an adjourned term in *August*, 1850.

On the trial, the plaintiffs founded their claim of title on the will of *Joshua Robinson*, deceased, dated *April* 5th, 1837 ; and approved by the court of probate, *July* 6th, 1838. The clauses of the will material in this case, are stated in *Williams* v. *Robinson*, 16 *Conn. R.* 517, 18.

The plaintiffs also claimed title to the demanded premises, at the time of bringing this suit, and to a recovery now, by virtue of the deed from *William Robinson* to *Joseph Robinson*, and the mortgage deed of *Joseph Robinson* to *Rufus Williams*, and the decree of foreclosure under the same ; the deed of *Benjamin Robinson* to the plaintiff ; the deed of *Rufus Williams* to *John H. Cross*, one of the plaintiffs ; the deed of *Benjamin Robinson* to *Joseph Robinson*, and of *Joseph Robinson* to the plaintiffs ; and the mortgage deed of *Joseph Robinson* to *Russell Bently ;* the assignment to *Isaac Pomeroy*, and the facts found therein, and the decree in his favour against the defendant, and the assignment thereof to said *Cross ;* and by mortgage deed of the defendant to *William D. Wells*, and an assignment of the same to said *Cross ;* the bill in chancery brought thereon, and the facts found, and decree of foreclosure on the same, in favour of said *Cross* against the defendant ; also the deed of *Nathaniel Robinson* to *Joseph Robinson ;* all these documents or copies thereof, being produced in evidence.

It was agreed, that the defendant was in possession of the premises, and had been, for many years previous to the death of the widow of *Joshua Robinson ;* that she was dead, at the time of bringing this action ; but that the period of three years since her death would not be completed till the day of *November*, 1850.

The defendant claimed, that he had made full payment to said *Cross* of the debt, costs, &c., due on the *Wells* mortgage ; and to prove this fact, he offered in evidence the receipt of said *Cross* to the defendant ; which said receipt, the plaintiffs agreed was true and correct, and which was in these words :

"I certify that *Nathaniel Robinson* has this day tendered to me, 1665 dollars, 64 cents, in full payment of a decree of foreclosure which I obtained against said *Robinson* at the last *March* term of the superior court for *New-London* county ; which said money I have received, but not in full pay-

ment of said decree. *Westerly, August* 17th, 1849. *John H. Cross.*"

It was also agreed, that no demand to be let into possession of the premises, or any part thereof, had ever been made by the plaintiffs of the defendant.

The defendant then, to show title in himself of two-fifths of the premises, exhibited in evidence the deed of *Thomas W. Robinson* and *Joseph Robinson* to himself.

It was agreed, that the defendant had never ousted the plaintiffs of the possession of the demanded premises, unless, on the facts admitted, with the evidence of title as above set forth, there was an ouster implied by law.

The plaintiffs claimed, that there had been nothing done to vary their legal right to a recovery of the demanded premises since the bringing of this suit, and therefore claimed a verdict and judgment for possession of all the land described in the declaration.

The defendant claimed, that under the will of *Joshua Robinson,* the plaintiffs had no right to recover possession of any part of the demanded premises, until three years after the death of the testator's widow.

The defendant further claimed to be the owner of two-fifths of the demanded premises; and that, until demand of possession had been made of him, or he had done some act to hold the plaintiffs out of possession, there was no such ouster as between cotenants, as was requisite to enable one cotenant to maintain ejectment against his cotenant.

The defendant further claimed, that the plaintiffs had, in any event, shown title to no more than three-fifths of the demanded premises, undivided and in common; and that they could not therefore recover possession of the whole of the property, but only for their proportional share; and the defendant prayed the court to charge the jury in conformity to these claims.

The court declined to charge the jury as claimed by the defendant, and did charge in conformity to the claim of the plaintiffs.

The jury returned a verdict for the plaintiff; and the defendant thereupon moved for a new trial, for the omission of the court to charge the jury as prayed for by him.

HARVARD LAW SCHOOL

*Foster* and *Wait*, in support of the motion, contended,

1. That the plaintiffs, in this case, under the will of *Joshua Robinson*, cannot recover possession of the premises until three years have elapsed after the death of the testator's widow. *Williams* v. *Robinson*, 16 *Conn. R.* 517. *Jackson* d. *Church* & al. v. *Brownson*, 7 *Johns. R.* 227, 232. *Jackson* d. *Lewis* & ux. v. *Schutz*, 18 *Johns. R.* 174. 184.

2. That the defendant was owner of two fifths of the demanded premises, undivided and in common with the plaintiffs. There was no demand, by the plaintiffs, to be let into possession, and there was no act done amounting to an ouster of one cotenant, by another : therefore, there can be no recovery. 1 *Sw. Dig.* 508, 9. *Barnitz's* lessee v. *Casey*, 7 *Cranch*, 456. *Clark* v. *Vaughan*, 3 *Conn. R.* 191. *Carpenter* v. *Thayer* al. 15 *Verm. R.* 552. *Chiles* v. *Conley*, 9 *Dana*, 385. *Allyn* v. *Mather*, 9 *Conn. R.* 114. *Obert* v. *Bordine*, 1 *Spencer*, 394. *Harmer* v. *James*, 7 *Sm. & Marsh.* 111.

3. That the plaintiffs, at the most, shew title to three-fifths of the premises only, and cannot, therefore, recover possession for any more than their proportional share. *Harrison* & al. v. *Stevens*, 12 *Wend.* 170. *Van Alstyne* & ux. v. *Spraker*, 13 *Wend.* 578. *Johnson* v. *Norton*, 3 *B. Munroe*, 429. *Vrooman* v. *Weed*, 2 *Barb. Sup. Ct. R.* 330. *Truax* v. *Thom, Id.* 156. *Moore* v. *Abernathy*, 7 *Blackf.* 442.

4. That an action of ejectment will not lie on a satisfied mortgage. *Richards* v. *Sims, Barnard, Ch. R.* 90. *The King* v. *St. Michael's, Doug.* 632. *Matthews* v. *Wallyn*, 4 *Ves.* 128. *Martin* d. *Weston* v. *Mowlin*, 2 *Burr.* 969. *Petty* v. *Clarke*, 5 *Peters, (U. S.)* 483. *Jackson* d. *Norton* & al. v. *Willard*, 4 *Johns. R.* 41. *Hitchcock* & ux. v. *Harrington*, 6 *Johns. R.* 290. 294. *Runyan* v. *Mersereau*, 11 *Johns. R.* 534. *Jackson* d. *Curtis* v. *Bronson*, 19 *Johns. R.* 325. *Porter* v. *Seeley*, 13 *Conn. R.* 564.

*Strong* and *Pomeroy*, contra, insisted, 1. That the case of *Williams* v. *Robinson*, 16 *Conn. R.* 517., so far from supporting the position for which it had been cited, by the defendant's counsel, shewed decisively, that the mortgagee was then entitled to his action at law to recover possession, without waiting for the death of the testator's widow.

2. That the restriction on alienation, imposed by the will, if valid, had been strictly complied with; and an estate in fee simple of three-fifths of the premises had become vested in the plaintiffs, by regular conveyances in accordance with the provisions of the will. Where there is a general devise, without specifying the quantity of interest, and an absolute power of disposal is given, the devisee takes a fee. 1 *Sw. Dig.* 149. 4 *Kent's Com.* 535, 6. (3rd. ed.)

3. That the plaintiffs have done nothing to divest themselves of the right to maintain this action. The receipt given by the plaintiff *Cross* to the defendant, is not a conveyance to the defendant of the premises, or any part thereof, or a discharge of any legal or equitable claim, or right to the possession of any part of the premises; nor is it so expressed; nor was it so intended. The payment of the mortgage money, after forfeiture, does not divest the mortgagee of his legal estate, but only gives him a right to compel a reconveyance. *Phelps* v. *Sage,* 2 *Day,* 151. *Dudley* v. *Cadwell,* 19 *Conn. R.* 218.

4. That the cause was properly submitted to the jury, upon the evidence. The substantial part of the evidence for the plaintiffs, is contained in the motion and the documents therein referred to, uncontradicted and unobjected to. The jury had only to consider the sufficiency of that evidence to warrant a recovery.

ELLSWORTH, J. The premises were formerly the property of *Joshua Robinson,* deceased, under whose will both of the parties claim title. The plaintiffs are admitted to be tenants in common, (though in unequal proportions,) of three-fifths of the premises, by a good and valid title, provided the said three-fifths could, in law, be sold and alienated under the will of the said *Joshua,* as has been attempted. Three of his five sons, who take the estate, each one-fifth, sold each his one-fifth to the plaintiffs, or those under whom they claim; and the plaintiffs acquired an undisputed title thereby, and to that extent, unless the provisions of the will stand in the way of the sons' right to sell and convey to *strangers.* The defendant, who is one of the five sons and devisees, but not one of the three who conveyed the three-fifths, which are in the plaintiffs, insists, that the plaintiffs could not acquire a title under said will, as they now claim.

*New-London,* July, 1851.

Cross
*v.*
Robinson.

It appears, the testator left a widow, who was, by the terms of the will, to have the use and improvement of one undivided half of the estate in question, during her life, while the other half, and the fee of the half incumbered by her life estate, were given to his five sons.

The will, after devising the premises to the widow and five sons, as just mentioned, contains this proviso : " Provided nevertheless, it is my will, that none of the real estate which I have given to said five sons, shall be sold, until three years after the decease or widowhood of my wife *Nancy,* unless sold to some of my five sons, meaning to have it improved all together until that time ; and it is my will, that whoever of my said sons shall improve said farm, he shall pay a reasonable rent for the same."

Now, as the title of the plaintiffs passed originally from the three sons to their grantees and to the plaintiffs, strangers, before the expiration of the three years next after their mother's death, and perhaps too, before her death, the defendant insists, the plaintiffs, being strangers, under the language of the will, could not acquire a title, however sufficient the deeds were made, in form and substance. It will be noticed, that this suit was not commenced until after the death of the widow ; but it was commenced before the expiration of the said three years.

We think the objection is not well taken. The restriction upon the power of alienation, imposed by the testator's will, was intended merely to protect the use and enjoyment of the premises for the *widow* of the testator, so long as she should survive, or remain his widow. It was not intended, that the sons should not raise money, by mortgaging or otherwise disposing of their respective shares of the estate ; and they have, in fact, each one of the five, during the life of their mother, or perhaps one of them, soon after her death, if that be important, broken up the joint title, by alienating to *strangers* their respective interests. And now, since the mother is dead, and having died before the present suit, it would be strange indeed, if any of the sons, after what each has done, can interpose this personal objection drawn from the will, to defeat a recovery, on the ground of the violation of its provisions.

But the objection comes with an ill grace from the defend-

*New-London,*
July, 1851.

Cross
*v.*
Robinson.

ant.  *He* has given a deed, with covenants of seisin and warranty to *Wm. D. Wells*, one of the plaintiffs' grantors, of the two-fifths he claims to have bought of one of his brothers, and the only interest he now sets up, in himself.

We need not, however, spend time on this point, because this clause in the will has already been fully considered, and received a construction from the court, in *Williams* v. *Robinson*, 16 *Conn. R.* 517. where the question arose as to the ability of the sons to alienate their shares, during their mother's life.  The court there held, " that in order to ascertain the construction to be put upon this provision of the will, it becomes necessary to look at the object which the testator had in view in making it.  Was it to deprive his sons of all power of alienation, during the widowhood, or rather to protect the widow in the enjoyment of the interest devised to her?  The latter seems the most probable.  He directs that the estate shall be improved, by one of the sons whom his widow may elect, and who is to be accountable to her and the other sons for the rent of their respective shares.  He doubtless meant to guard the widow against the annoyance which might arise from having a stranger occupy with her, one-half of the house and farm."

The next objection raised by the defendant, allowing the plaintiffs have got title to three-fifths of the estate under the will of *Joshua Robinson*, is, that these said three-fifths are in common and undivided with the other two fifths, and as the defendant claims to own the said two-fifths, and has not objected to the plaintiffs' entering into possession of their three-fifths with him, he has not, as he says, disseised the plaintiffs of their three-fifths; and it is agreed, there is no other disseisin done by the defendant, but what arises from his being quietly in possession as an owner: hence the plaintiffs must prove, and they insist they do prove, that he has *no right* to be in possession at all, that he is not a tenant in common of any title or right.  If the defendant's claim is well founded, he must prevail; but if he has no right or title, then the plaintiffs must prevail.

As to the two-fifths, the following appear to be the facts. *Joseph Robinson*, at a certain period, was the owner of one-fifth, under the will of his father, and of one-fifth by deed

VOL. XXI.            49

from a brother. These two-fifths he conveyed, by deed, to one *Russell Bently*, to secure the payment of a note of hand for 250 dollars, which he owed him; after this mortgage to *Bently*, *Joseph* conveyed them fully to the defendant; and the defendant then conveyed them to *Wm. D. Wells*, to secure him for endorsing a note of 800 dollars, with *covenants of seisin and warranty*, making no mention of the prior mortgage to *Bently*. *Wells* was obliged to take up the note he had endorsed; and he afterwards assigned said debt to *Cross*, one of the plaintiffs, and executed to him a deed, in the usual form, conveying his security in the two-fifths and the benefits of the covenants of his deed from the defendant. The *Bently* debt too became, through *Isaac Pomeroy*, the property of said *Cross*, though *Bently* did not, when he assigned his debt to *Isaac Pomeroy*, in form assign his legal title to the security. The two debts and the security being thus vested in *Cross*, so far as the facts aforesaid show, he brought his bill to foreclose the defendant's equity in the security and obtained a time of limitation, from the court, for payment of these debts, and another small one, in the whole 1,552 dollars, 96 cents; but before the limitation expired, the defendant tendered the aforesaid sum to said *Cross*, together with a few dollars more, which was accepted by him; but, as he then insisted, and still insists, was not received in full payment, although enough was done perhaps to prevent the decree of foreclosure from taking effect. The defendant insists, the debts are fully paid; and therefore, that since the *Bently* mortgage was of earlier date than the *Wells* mortgage, and since *Bently* has not released to any one his legal title to the two-fifths mortgaged to him, though he did assign the debt, *Cross* has not now the legal title to these two parts; and as he, the defendant, has paid the debts, as he says, he is, and was, when this action was brought, really the owner of his two-fifths, and therefore had a *right* to be and remain in possession in common.

To this defence there are two answers made by the plaintiffs; and the latter of them at least, we consider to be unanswerable. First, the plaintiffs, being owners of three undivided fifths, can recover the whole for themselves and their cotenants from the defendant, who, the plaintiffs insist, shows

no legal title at all, though he may possibly have an equita-
ble one. If *Bently* has it, as the defendant insists, they say,
this does not help the defendant until he gets a reconveyance
from *Bently*, which reconveyance, they further say, would
not avail the defendant, as the release would enure to the
plaintiff's benefit, for the reason next to be mentioned. Sec-
ondly, the defendant, as already stated, conveyed the two-
fifths to *Wells*, to secure him against an endorsement, which
deed contains the usual *covenants of seisin and warranty*,
without any exception, so that, by virtue of *Wells's* deed to
*Cross*, the debt, land, and covenants, became vested in him.
Now, could not *Wells*, by virtue of his warranty deed from
the defendant, have claimed the title and possession, and at
once have ejected the defendant. And if he could, his as-
signee or grantee, said *Cross*, can do it, now; unless indeed,
the supposed or actual payment of the debts by the defend-
ant, affects the question, which we think it does not. The
defendant is estopped, by the covenants in his deed, from
denying the title of *Cross* to the said two-fifths.

We consider it too well settled, in the state of *Connecticut*,
to be debated, at this day, that as between the mortgagor
and mortgagee, or the assignee of the mortgagee, payment
of the mortgage debt, after the law-day, does not affect the
legal title, in courts of law. However much mortgages, at
the present time, are treated as personal property—the mort-
gagor, as the owner of the land, and the mortgagee, as hav-
ing a lien or right to be paid out of it, before any other per-
son; still, as to the parties themselves, the real and public
title remains, and payment of the debt is no extinguishment
or release of the title of the mortgagee. This was settled
in our reports as early as 1805, (*Phelps* v. *Sage*, 2 *Day*, 150.)
and has been repeatedly confirmed, and more frequently rec-
ognized, since. *Roath* v. *Smith*, 5 *Conn. R.* 136. *Porter*
v. *Seely*, 13 *Conn. R.* 564. *Smith* v. *Vincent*, 15 *Conn. R.*
1. *Doton* v. *Russell*, 17 *Conn. R.* 152.

Hence the superior court was correct in refusing to go in-
to the question of payment of the mortgage debt. It was
immaterial. If the debt was indeed paid by the defendant,
and there was no equity in the way of obtaining a release

deed, the defendant had a clear remedy, by obtaining a re-conveyance of the title, to defeat the action of ejectment.

We do not advise a new trial.

In this opinion the other judges concurred.

New trial denied.