WM. RUMBOLDS, Respondent, *vs.* W. H. PARR, Appellant.

1. *Conveyance from father to son—Removal, consideration, what sufficient.*—The removal of a son to certain land, on the faith of a promise by his father to give him the land, the father being at that time in good circumstances; and the fact that afterwards the son parted with said land for the purpose of effecting the exchange, is a valuable consideration to support a conveyance by the father to the son, of other lands; even though at the time of the latter conveyance, the father had become insolvent.

2. *Fraud, presumptions as to.*—Fraud will not be presumed where all the facts consist as well with honesty and fair dealing, as they do with an intention to defraud.

### Appeal from Linn Circuit Court.

*C. W. Bell & A. W. Mullins,* for Appellant.

*Geo. W. Easley and Collier & Mansur,* for Respondent.

VORIES, Judge, delivered the opinion of the court.

The petition in this case shows that the respondent in this court recovered a judgment in the Linn Circuit Court on the 9th day of June, 1870, against one William Parr and George W. Stephens for the sum of $362 29-100 debt and damages; that Stephens was the surety of Parr; that on the 7th day of Sept. 1870, said Wm. Parr died; that letters of administration were granted on the estate of Parr to said George W. Stephens and Enoch Wesley; that on the 31st day of December 1870, the said judgment was allowed by the Probate Court of Linn county as a claim against said estate, and classified in the fourth class as the statute provides; that on the 30th day of November, 1869, said William Parr being largely indebted and in embarrassed circumstances, purchased from one Levi Welsh, the southeast quarter of the northwest quarter of Section nine, in Township fifty-eight, of Range twenty-one, which was of the value of one thousand dollars, and for which said sum was paid by said Parr; that for the purpose of defrauding, hindering and delaying his creditors, (and particularly plaintiff) he caused said land to be conveyed to the defendant, Wesley H. Parr, who is his son, and who received the title with notice of all the facts and circumstances stated; that he now holds the title thereto, in trust for the creditors of the said William Parr, who died insolvent.

The respondent then prayed that said conveyance to the defendant be set aside; that the tract of land described be decreed to be sold; that the proceeds arising therefrom be applied to the payment of his said judgment, and for other proper relief.

The defendant filed an answer to the petition, in which he denies the allegations of the petition, and states that he paid one thousand dollars for said land, its full value, in good faith, and that the land is his property, &c. The plaintiff in a replication denies that defendant paid for the land in good faith, or that he is the owner thereof.

A trial was had before the court. The court after hearing the evidence found all and each of the facts charged in the petition, to be true, and then rendered a judgment and decree. "That said conveyance of the land herein described to the defendant be set aside and for naught held and esteemed, and that the same be sold and the proceeds arising from the sale thereof be applied to the payment of plaintiff's debt; and that he have and recover of said defendant his costs in and about this suit laid out and expended, and that he have therefor execution."

The defendant filed a motion for a new trial, and set out as grounds for said motion : 1st. That the finding of the court is against the evidence in the cause. 2nd. That the finding of the court was against the weight of the evidence. 3rd. That there is no evidence to show that plaintiff's claim remained unpaid at the time of the bringing of the suit. 4th. That the judgment is against the law, and that improper evidence was admitted, &c.

This motion was overruled and the defendant excepted.

The defendant then filed a motion in arrest of the judgment, because the record of the judgment is erroneous. That the petition does not state facts sufficient to constitute a cause of action, and that the petition does not show that the plaintiff's claim is unpaid. This motion also being overruled the defendant again excepted and appealed to this court.

It appears from the Bill of Exceptions in this case, that the

plaintiff offered and read in evidence the judgment named in the petition, a list of the debts proved up and allowed in the Probate Court, having charge of said estate, amounting in all to from five to seven thousand dollars, and it was also shown by plaintiff's evidence that the sale bill by the administrator showed that the personal property belonging to the estate of William Parr, sold for $944.77-100 ; that the land which had been sold by the administrator of the estate, had sold for $3684.00-100. The whole assets in the hands of the administrator being $4,628.77-100. George W. Stephens, one of the administrators, testified that he knew the tract of land in controversy, which was conveyed to defendant in 1869. That William Parr paid for it; that he got the money from David R. Thompson, in part payment for a tract of land sold by Willliam Parr, deceased, to said Thompson.

The land sold to Thompson was 120 acres in the S. E. qr. of Sec. 4, Town. 58, R. 21, and 20 acres adjoining Sec. 9. The legal title to the land at the time, being in witness. "Wm. Parr," he testified, "wanted $1000 of the proceeds of the sale, to buy the land in controversy, for his son; he told me that he got $1000 in money of Thompson, that he paid Welsh $800 and a horse at $200 for the land." Thompson gave witness his note for the balance of the land purchased, being $1650, the 140 acres being sold to Thompson for $2650. Witness had before sold the land to William Parr for $1600. The defendant was living on the N. W. qr. of the S. E. qr. of Sec. 4, T. 58, R. 21, which was part of the 140 acres sold to Thompson; it was wild land when witness sold it to Parr. Dont know when defendant took possession of the land. There was a small frame house and some improvements on it when Parr sold it to Thompson. Witness sold Parr between 500 and 600 acres in all. He gave witness his notes for the land; the aggregate amount of the purchase was between $8000 and $9000 ; one thousand dollars was paid down, $1600 was paid when he made the sale to Thompson in 1869. He said he came from Indiana, he had several thousand dollars with witness before he purchased the large farm ; none of his

notes were due to witness until December 1866; deceased was very much embarrassed in 1869, when the land in controversy was conveyed to the defendant. The notes read in evidence as well as the accounts for 1867, were all due at that time. Mr. Thompson, who purchased the 140 acres of land of William Parr, testified that he was acquainted with the 140 acre farm, that he was to pay $2650 for it, he paid $1000 down; that he got the title from Stephens. William Parr bought a tract of land about that time, understood he paid $800 and a horse at $200 for the land. Witness stated that he referred to the 40 acre tract; that defendant lives on the Welsh tract. It was worth $1000. Witness bought the land from William Parr in November 1869, bought 150 acres. The defendant was living on 80 acres the west side of the tract witness bought. There was a house on the 80 acres, and about 24 or 25 acres fenced. The improvements were considered by witness to be worth $400; did not know who put the improvements there. When witness purchased of William Parr, he called it his son's land, he said it belonged to his son. Witness knew that there was an agreement between him and his son, the defendant, that he was to sell the 80 acres, and give his son the 40 acres in controversy. Witness considered the 80 acres worth $1650, with the improvements; the improvements were worth $400. Witness paid the $1650 to George M. Stephens, and $1000 to William Parr, gave a note to Stephens for the $1650.

The defendant introduced at least three witnesses beside himself who all swore to substantially the same thing. Two of these witnesses were brothers-in-law of defendant, and one a brother-in-law of William Parr, defendant's father. The evidence of these witnesses tended to prove, and did prove, if they were to be believed, that William Parr removed from the State of Indiana in the fall of 1864, that he, at that time, was in good circumstances worth from fifteen to twenty thousand dollars, that he was still in good circumstances in 1866, that when he was about to leave Indiana and come to Missouri in 1864, he desired his son, the defendant, to remove to Missouri along with him; that the defendant was unwilling to re-

move to Missouri. That the father in order to induce the son to come with him to Missouri, proposed to him that he would give him five hundred dollars when he got to Missouri, or give him a tract of land of that value ; the defendant agreed to this proposition and came with his father to Missouri. They testified that after they arrived in Missouri and had resided there for some time, the father purchased a large tract of land from one Stephens, and put the defendant in the possession of eighty acres thereof, in discharge of his promise to give the defendant five hundred dollars worth of land or five hundred dollars in money ; that defendant took possession of said land in discharge of said agreement and continued in possession thereof for three years, and made some four hundred dollars worth of improvements thereon. That afterwards in 1869, after the said William Parr, the father, had become embarrassed in his circumstances (which, the defendant swears, was unknown to him) the said William Parr had an opportunity to sell 140 or 150 acres of the tract of land purchased by him and not yet paid for, provided said eighty acres upon which defendant was residing, could be included in the purchase. That the said William Parr proposed to the son, that if he would surrender the land and the possession thereof, and permit the same to be sold to Thompson, he would purchase the land in controversy, and have it conveyed to defendant, in place of said 80 acres aforesaid. That defendant at first objected, and claimed that he ought to have about $1600 or what the eighty acres were really worth, in place of said eighty acres of land on which he resided. That the father expostulated with him ; told him he thought he ought to be satisfied to take the land in controversy. The defendant at last agreed to it, the land was sold to Thompson, the land in controversy was purchased by William Parr and paid for out of the money received from Thompson for the said land so sold to him, and the deed made to defendant who then received said conveyance and land in place of the eighty acres on which he had resided, and which had been sold to Thompson.

One William Taylor was examined, who testified that he re-

collected about the Welsh tract of land, the one in controversy. William Parr, the deceased, the defendant and witness were present about the time of the Thompson purchase of the eighty acre tract. The deceased spoke about the change of land. The defendant seemed unwilling to take the Welsh tract; deceased told him he ought to be satisfied with the forty acres; defendant said he ought to have all the proceeds of the sale of the eighty acres. The deceased again said, that defendant ought to be satisfied with the forty acres, the Welsh tract. Witness said the forty acre tract was worth $1,000 and the eighty acre tract was $1600.

The plaintiff then introduced a witness whose evidence tended to prove that the improvements made on the eighty acre tract of land spoken of, were not worth so much as four hundred dollars. This was substantially the evidence in the case.

The question to be considered in this case is, was the court authorized by this evidence under the state of the pleadings in the case, to make the decree made. This will depend upon the further questions, whether there was any consideration paid or given by defendant for the land in controversy; and whether the land was procured to be conveyed to defendant in order to defraud the creditors of said William Parr. It is difficult to point to the evidence in the case which one can rely on as evidence of fraud. The single fact that the father of defendant was indebted and in embarrassed circumstances at the time of the conveyance of the land in controversy to defendant must be relied on for such evidence. There is not only no other evidence to show fraud, but all of the other evidence in the case disproves and rebuts any presumption of fraud growing out of the circumstance of the indebtness of said Parr. At the time that William Parr sold the land to Thompson, it is shown by the evidence introduced by the plaintiff, that he told Thompson that the 80 acre tract belonged to defendant; that he paid down one thousand dollars in money; that the balance of the consideration $1600 was paid to Stephens, on what Parr owed Stephens for the land purchased of him. This arrangement was made, the $1600 was secured to Stephens, and the

thousand dollars paid in money to Parr to enable him to purchase the land in controversy for defendant. Stephens was satisfied with the $1600 on his debt, and conveyed the land to Thompson.

Stephens was the largest creditor of William Parr, and he was cognizant of all of this arrangement and has not complained. It seems from the evidence of several witnesses, which is uncontradicted, that William Parr agreed to give the defendant five hundred dollars or the worth thereof in land, if he would remove with him to Missouri from where he resided in Indiana. That defendant, in confidence in said promise, did leave Indiana, and remove with his father to Missouri, when the father put the defendant into the possession of the 80 acres of land sold to Thompson, and promised the land to him, which was received by defendant in discharge of said promise, and improvements made thereon. These facts constituted a good consideration for the 80 acres of land, the conveyance of which could have been enforced by the defendant if the legal title had been in his father, William Parr. (Halsa vs. Halsa, 8 Mo., 303.) There is no evidence to show that William Parr was insolvent at the time of this promise to defendant, or at the time that he put him in the possession of the eighty acres of land, and there can therefore be no pretense of fraud up to this time. The title of the land being in Stephens, he could hold the land, and thus protect himself until he was paid for the land. Fraud will not be presumed, when all of the facts in the case consist as well with honesty and fair dealing, as they do with an intention to defraud. (Dallam vs. Renshaw, 26 Mo., 533.)

In this case the evidence comports with honesty and fairness. The cases referred to by the plaintiff to sustain the decree rendered by the Circuit Court, are all cases in which the defendant either held without any consideration, being a mere volunteer, or where actual fraud had been shown by the evidence.

The case under consideration, does not come within either of these predicaments. The breaking up of the defendant in

the State of Indiana, and removing to Missouri with his father, was a good consideration for the promise of the father to pay him five hundred dollars, or give him land of that value. When the father placed the defendant in the possession of 80 acres of land in discharge of said promise, and the defendant accepted the same and made improvements thereon, the defendant, as against the father, had a vested right in the 80 acres of land. This he gave up to the father, and permitted the land to be conveyed to Thompson, upon the promise that the father would give him the 40 acres of land now in controversy in place of the 80 acres sold to Thompson.

By this arrangement the father became indebted to the son for the 80 acres of land, and was as much bound in good conscience to discharge it, as he was to pay any other debt; and the evidence shows that the defendant reluctantly agreed to this arrangement, because the 80 acres of land sold to Thompson was worth more than the 40 acres in controversy. The land sold to Thompson, was sold for $2650; with one thousand dollars received for it, the father paid defendant what he had promised him, by buying and having conveyed to him the land in controversy. The balance ($1,650,) was paid to Stephens, to whom William Parr, owed the money. I cannot see how this could be construed into an intention to defraud the creditors of William Parr. In fact I think there was no evidence in the case that would authorize the Court to find that either William Parr or the defendant ever had it in their contemplation to perpetrate a fraud upon the creditors of William Parr, or to hinder or delay them in the collection of their debts, or that the conveyance of the land in controversy to defendant was made without consideration moving from the defendant.

The judgment of the court below ought therefore to be reversed.

The other judges concurring the judgment is reversed, and the petition dismissed.