## McManness et al. v. Paxson et ux.

*(Circuit Court, W. D. Missouri, C. D.   January 14, 1889.)*

**1. Vendor and Vendee—Parol Contract—Evidence—Sufficiency.**
    A father purchased land in Missouri with the avowed purpose of giving it to his two sons, and, after living on it for two years, returned to his home in Ohio. He left the defendant, one of his sons, in possession of part of it, orally promising defendant, as the latter alleged, to give him the land if he would move on it. After returning to Ohio, the father became embarrassed, and needed the proceeds of the land, whereupon he gave his son notice to leave the land, which he did without objection, and returned to Ohio, where he remained nine years. In the mean time the father conveyed the land to plaintiffs' assignor, subject to certain trusts, with power to sell. Afterwards said assignor sold the land to defendant, taking a mortgage for the purchase money. The deed to defendant referred to the trust under which the mortgagee held the land, and defendant never set up any claim to the land under the oral contract with his father until five years later, when plaintiffs sued to foreclose the mortgage. *Held*, that the alleged oral contract was not established by the evidence.

**2. Mortgages—Foreclosure—Estoppel—To Deny Title.**
    A defendant mortgagee in foreclosure of a mortgage containing covenants of seisin and special warranty cannot set up a prior and paramount equitable title in himself.

In Equity.   On bill of foreclosure.

Bill by Lemuel McManness and Maris Paxson, assignees of M. C. Whitely, to foreclose a mortgage executed by defendants Henry Paxson and Maria Paxson, his wife, on lands in Morgan county, Mo.

*Draffen & Williams*, for complainants.

*Dan E. Wray*, for defendants.

Philips, J.   This is a bill in equity, to foreclose a mortgage executed by the defendants Henry Paxson, and Maria, his wife. The mortgage grew out of about the following state of facts: One Eli Paxson, the father of defendant Henry, resided in the state of Ohio. In the year 1868 he came to Morgan county, Mo., with the view of making the purchase of some lands. He purchased between five and six hundred acres, for which he paid $7,000, and received a deed therefor in the fore part of 1869. He came to this land with the defendant Henry and his other son, Maris, the plaintiff herein, and lived upon it for about two years, when he returned to the state of Ohio. He was then some 70 odd years old. At that time he had other money in bank at his Ohio home. This bank failing in 1878 left him in very straightened circumstances, rendering it necessary for him to make some disposition of this Missouri land to obtain the means of support. There was litigation in the courts of Missouri affecting the title to this land. In his extremity he applied to one M. C. Whitely, who was an attorney at law, and an old friend, for assistance. After many suggestions and negotiations it was agreed and arranged between them that Mr. Paxson should convey to Mr. Whitely the said land in Missouri, and thereupon, on the 15th day of March, 1879, Mr. Whitely and Mr. Paxson executed a trust instrument, by which it

was declared that Mr. Whitely should take this land for the purpose of looking after the same, paying the taxes, and furnishing the necessary money for defending and perfecting the title thereto; renting and making sale thereof, if necessary, to raise means for the support of said Paxson and wife. By this declaration of trust, Mr. Whitely was authorized to make sale of the land at his discretion, on the best terms attainable; and out of the proceeds to pay the taxes and expenses of said litigation, and to reimburse Whitely for his services, etc., in the premises; and, after the death of said Paxson and wife, he was furthermore authorized and empowered to make division of the proceeds of said land, or the land in kind, among the children of said Paxson. The old man Paxson died April 1, 1879; his wife surviving him till 1884. In the mean time the litigation in Missouri affecting the land had terminated in favor of Paxson. In March, 1871, Henry, on notice from his father, had surrendered possession of the land to him or his agent, and shortly thereafter returned to the state of Ohio. Whitely, not being able to obtain a purchaser for said land, concluded a sale of the portion covered by the mortgage,—the subject of this litigation,—to the defendant Henry Paxson, for the sum of $3,000, $600 of which was then paid, and for the residue of the purchase money the defendant executed five several promissory notes, payable in two, three, four, five, and six years after date, for the sum of $480 each, to secure the payment of which the defendant executed to said Whitely the deed of mortgage herein sued on. In the settlement of the trusteeship of Whitely, part of the land undisposed of by Whitely was conveyed to the plaintiff Maris Paxson, as also three of the notes, as his distributive share of the estate, and as a compensation for his services in taking care of his mother after the death of his father; and the last of said notes was cancelled and delivered up to the defendant Henry as his distributive share of the estate. The second of said notes was transferred to Bennett Paxson, another of said heirs, in satisfaction of his distributive share, who, on the 18th day of March, 1881, assigned the same for value received to the plaintiff McManness.

Immediately after the purchase of said land by the defendant from Whitely, he returned to Missouri, and Whitely put him in possession of the land, which he has ever since held. The defense set up to this bill of foreclosure in substance is that the defendant did not know at the time he took the deed from and executed the notes and mortgage to Whitely that Whitely held the title to the land under the trust arrangement between him and Eli Paxson; and that, if he had known the facts, he would not have made such purchase, and executed said notes and mortgage; that he supposed Whitely had bought from his father as an ordinary purchaser for value received. The answer does not charge, in terms, that Whitely, in making the sale, was guilty of any positive fraud or misrepresentation to mislead or deceive him as to the existence of such trust. The answer further sets up that Henry's father induced him to come with him from the state of Ohio on the promise to give him this land; that accordingly he did so come and take possession of the same on the faith of such promise, and that he so occupied and held the

land up to the time his father gave him notice to quit; that by reason thereof he became, and was at the time he took the deed from Whitely, the equitable owner of the land.

Without stopping here to consider the evidence in detail adduced at the trial, it occurs to me that there are certain fixed principles of law lying at the very threshold of this controversy, which greatly embarrass the defense interposed to this action. The deed of mortgage, after the *habendum* clause, contains this covenant provision:

"And the said Henry Paxson and Maria Paxson do for themselves and their heirs, executors, and administrators covenant with the said Machias C. Whitely, his heirs and assigns, that at the time of signing these presents they were jointly and well seised of the above-described premises as a good and indefeasible estate in fee-simple, and have good right to bargain, sell, or incumber the same; and that they will warrant and defend the said premises, with the appurtenances unto the same belonging, to the said Machias C. Whitely, his heirs and assigns, forever, against all acts done or suffered by them or either of them."

The authorities are agreed that this affirmative covenant operates as an effectual estoppel against the mortgagor to assert against the mortgagee or assignee that he did not have the title or the right to make the mortgage on the land at the time of its execution. 2 Jones Mortg. § 1483, says:

"A mortgagor is estopped to deny his title. He cannot set up as a defense for himself against the mortgagee that the property so mortgaged is trust property, which he had no right to mortgage. He cannot claim adversely to his deed, but is estopped by it. * * * At the present time, and especially where a mortgage is merely a lien and not a title, this estoppel must be regarded as arising only from a covenant for title, express or implied."

While it may be conceded that perhaps the modern doctrine is that the relation between mortgagor and mortgagee is not so similar to that of landlord and tenant as to prevent the mortgagor from setting up an outstanding title or a newly-acquired title, it does not apply where the mortgage deed contains an express covenant, as does this. *Bush* v. *White*, 85 Mo. 357, 358. It is also an established principle that in the action of foreclosure in equity the mortgagee's title acquired under the mortgage cannot be questioned by the mortgagor in defense to the bill, except perhaps on the score of usury and the like, in those jurisdictions where such usury avoids the contract. The title can only be investigated at law, and not in a chancery foreclosure. 2 Jones Mortg. § 1482. "It is a general rule that a mortgagor, and those claiming under him, are estopped from saying that no title was conveyed to the mortgagee. In executing the instrument they hold forth that they have title or authority to convey, and that title, whether good or bad, the mortgagee is entitled to." *Bailey* v. *Trustees*, 12 Mo. 177. So 1 Jones Mortg. § 682, says:

"A mortgagor, by a mortgage containing the usual covenants of seisin and warranty, is estopped to deny the title of the mortgagee. * * * The mortgagor in such case will not be heard to say in contradiction of his covenant of warranty that he had not title at the date of the conveyance, or that it did not pass to the mortgagee by virtue of his deed."

It would be a contradiction in terms of the covenant of seisin and warranty for the mortgagor to either say that he had not title, or that whatever title he did have did not pass to the mortgagee under his mortgage deed. *Cross* v. *Robinson*, 21 Conn. 379. An executor, who takes a deed as such, and gives back a mortgage as such, is bound thereby, and estopped to deny his appointment and authority. *Van Dyck* v. *McQuade*, 18 Hun, 376. It was the English law that the title is not brought in issue in a petition for foreclosure. *Bull* v. *Meloney*, 27 Conn. 563, 564. This rule is very fully and aptly expressed in *Anderson* v *Baxter*, 4 Or. 110, as follows:

"Formerly a mortgage of real property was regarded as a conveyance of the legal title, subject, of course, to be defeated by the performance of a condition, and this doctrine still prevails to some extent. Courts of equity, however, have always regarded a mortgage as a mere security for a debt, and the foreclosure thereof as a proceeding to satisfy the debt secured thereby; and courts of law as well as courts of equity, in many of the states, have taken the same view; that is, that a mortgage was a mere lien or pledge, and that the general title to the mortgaged property was in the mortgagor. In the language of one of the authorities, 'the mortgagee has neither a *jus in re* nor *ad rem*, but a specific lien, similar in character to a general lien created by a judgment upon the land of the judgment debtor.' *Gardner* v *Heartt*, 3 Denio, 232. However this may be, as a matter of strict law, I am satisfied that a suit to foreclose a mortgage is not for the determination of any right or claim to or interest in real property, but a proceeding to have the mortgaged property adjudged to be sold to satisfy the debt secured thereby. In such a suit the title to the mortgaged premises is in nowise drawn in question. The adjudication is merely as to the fact of the execution of the mortgage, the amount due thereon, and the sale of the property to satisfy the debt secured. It is the mere collection of a debt charged upon specific property by resorting to the property as a means of satisfying it. If it were a suit to divest a party of title, or to establish some right regarding the title to real property, it would stand upon a different footing; but, the mortgage being in equity only a chose in action, a suit to foreclose it is more analogous to an action upon a sealed instrument."

Applying these principles to this case, what difference can it make whether or not the defendant acquired an equitable title under his alleged contract with his father? No matter whence comes his title, he covenanted with the mortgagee that he had title, and the right to mortgage; and he is estopped to deny that whatever title he has passed to the mortgagee as a security for the notes, subject to the conditions expressed in the mortgage. The mere fact, without more, that defendant did not know, when he gave the notes and mortgage, that Whitely held the legal title to the land subject to the declaration of trust, or that defendant would not have taken deed from Whitely, and executed the notes and mortgage, had he been so informed, is not sufficient to destroy the validity of the notes and mortgage. The conveyance from Whitely, whereby he obtained the legal title to and possession of the land, would constitute a valid consideration. The defendant knew then as well as now of his claim and rights under the imputed contract with his father. There is scarcely any ground of pretense that Whitely, by any trick and deception or representation, practiced any fraud upon defendant, which in

equity or law would avoid the notes.    Leaving out of view the testimony of Whitely, that defendant knew all about the declaration of trust and the purpose for which the land was being conveyed by him to defendant, and accepting as true the defendant's own statement, there was no conduct on the part of Whitely upon which any imputation of fraud could be based.    The substance of the defendant's statement is that Whitely did not inform him of the trust, but said he held the title with full authority to convey.    All of which, in fact and law, was true. There is no failure of title in the deed from Whitely to defendant, and no breach of any covenant.    The defendant was *sui juris.*    He was not *non compos mentis.*    If he made an improvident bargain, and bought land which in equity already belonged to him, he has no one to blame but himself.    He is not an imbecile, that he should call upon the court for protection.

But, looking further into the equities of this case, the defense is without merit.    The whole transaction between defendant and his father, upon which he predicates his equitable title to the land, prior to the deed from Whitely, rests *in pais.*    There was no written memorandum to take the case out of the operation of the statute of frauds.    It requires no citation of authorities to support the proposition that the proof of a parol agreement in such case should be so clear and persuasive as to leave no reasonable doubt in the mind of the chancellor as to its precise terms. Outside of the deposition of the defendant, there is no evidence of any meeting and agreement between defendant and his father respecting the terms of the alleged gift.    The defendant is clearly an incompetent witness to speak of this contract in this controversy.    *Chapman* v. *Dougherty,* 87 Mo. 617.    Whatever doubt existed on this subject is now removed by the late amendatory statute of Missouri.    Laws Mo. 1887, p. 287. See, also, section 858, Rev. St. U. S.    It is true that defendant shows by other witnesses that on or about the time Eli Paxson was in Missouri, purchasing this land, he stated he was buying it for his two sons, Henry and Maris, and that he intended to give it to them.    And it may be conceded to defendant that if in consideration of said promise he removed with his family from the state of Ohio to Missouri, and took possession of said land, and occupied and improved it in expectation of the fulfillment of said promise, and had not voluntarily abandoned the same, he would have been entitled, as against his father and those in privity with him, to a specific performance.    *Halsa* v. *Halsa,* 8 Mo. 303; *Rumbolds* v. *Parr,* 51 Mo. 592.  But the subsequent conduct of the defendant strips him, in contemplation of equity, of every vestige of such right as a defense to this action.    As evidence that the father did not regard the existence of such obligation, after living less than two years upon this land with his son, he returned to the state of Ohio, and gave written notice to defendant to quit and surrender the possession to his son-in-law. Thereupon the defendant left the premises, in March, 1871, without one word of objection or protest; and shortly thereafter returned himself to Ohio, living near his father, seeing him frequently; and from that day to the date of taking the deed from Whitely it does not appear that he

ever asserted or set up any claim whatever to this land. It is incredible to believe that if he entertained in his own mind even the thought or belief that he had any equitable right to this land, he would enter upon negotiations with Whitely for the purchase thereof, without suggesting the right he now sets up. Mr. Whitely deposes that the defendant was fully informed, prior to any negotiations leading to the sale of the land and the execution of the mortgage, of the existence of said declaration of trust, and the precise circumstances under which Whitely held the same; and that defendant frequently advised and consulted with him as to the best means of managing and disposing of the property to accomplish the purposes of the trust. We can discover nothing in the character of Mr. Whitely, or in his relations to this case, to justify the court in discrediting his testimony. He was acting throughout as the trusted friend and trustee of the father, Eli Paxson, to aid and provide for him in the adversity of old age. He had no personal interests or ends to subserve in the matter; and as proof confirmatory of his testimony, the defendant took from him a quitclaim deed, in which deed direct reference was made to the trust, as testified to by Whitely. Defendant must be presumed to have known the contents of the deed under which he took title. *Orrick* v. *Durham*, 79 Mo. 178. As said by Atwater, J., in *Daughaday* v. *Paine*, 6 Minn. 452, (Gil. 304:) "It is contrary to reason and good sense that a party should be excused from knowing the contents, and the whole contents, of his title deeds." Not only this, but the defendant obtained possession of the land under the Whitely deed after having been out of possession for nine years; and after he was readmitted he remained silent for five years more, until this foreclosure suit was brought. During this time he permitted, without notice of claim or protest, the trustee Whitely to settle up his trusteeship, and distribute the proceeds of the sale of this land in pursuance of the trust; actually taking himself one of the notes from the trustee as his distributive share of the estate, and tacitly suffered the plaintiff Mr. McManness to become the purchaser of one of the notes in suit at its full value, as shown by the depositions. This conduct is wholly inconsistent with his defense. He has not exhibited the willingness, eagerness, and promptness required to entitle him to a standing in a court of equity as for a specific performance. Decree for complainants.